IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**LINDA APODACA**,

        Plaintiff,

v.                                                  No. 1:11-CV-00916-MCA-WPL

**VILLAGE OF ANGEL FIRE, STUART
HAMILTON,** *Mayor,* **and TERRY
CORDOVA,** *Records Custodian*,

        Defendants.

## MEMORANDUM OPINION AND ORDER

    **THIS MATTER** is before the Court on Defendants' *Motion to Dismiss Count IV (Violation of the Inspection of Public Records Act) of Plaintiff's Complaint*, filed on November 17, 2011. [Doc. 16]  Having considered the submissions, the relevant case law, and otherwise being fully advised in the premises, the Court denies Defendants' motion.

## I.    BACKGROUND

    On October 13, 2011, Plaintiff Linda Apodaca filed a *Complaint for Violation of the First Amendment, the Fourteenth Amendment, the New Mexico Whistleblower Protection Act, and the Inspection of Public Records Act* [Doc. 1] against Defendants the Village of Angel Fire (the Village), the Mayor of the Village, Stuart Hamilton, and the Village's Records Custodian, Terry Cordova.  The *Complaint* alleges the following relevant facts.

Plaintiff was employed as the acting Finance Director for the Village.  In January 2011, Plaintiff became aware that on two occasions the Village Administrator, Larry Leahy, had submitted leave forms misrepresenting his vacation leave as sick leave in violation of Village ordinances.  Plaintiff discussed this information with Waverly Bell, the Accounts Payable and Payroll Clerk, Defendant Cordova, and Defendant Hamilton.  Plaintiff also published copies of Mr. Leahy's leave submissions to members of the Village Council and the editor of the local newspaper, the Sangre de Cristo Chronicle.  [Doc. 1 at 3-5]

In a letter dated January 10, 2011, Defendant Hamilton notified Plaintiff that she was being placed on administrative leave pending an investigation into her acquisition of public records related to Mr. Leahy's leave submissions.  This investigation included a criminal investigation into the crime of identity theft, although no charges were ever filed.  In a letter dated February 8, 2011, Defendant Hamilton notified Plaintiff that she would be terminated from her employment effective February 11, 2011. [Doc. 1 at 5-6]

On May 11, 2011, Plaintiff submitted a public records request to Defendant Cordova. Specifically, Plaintiff requested to inspect the following:

- Records related to Larry Leahy's employment at the Village of Angel Fire. Please include (i) his personnel file, (ii) any performance evaluations or other comments, discussion, criticism, or communications (including email) related to his job performance, (iii) pay records, and (iv) time cards and/or leave records, including Larry Leahy's sick leave, annual leave, or any other form of leave.
- Records related to formal or informal grievances, complaints and lawsuits filed against Larry Leahy.
- The personnel file of [Plaintiff].
- All records and communications (including email) regarding the suspension and termination of [Plaintiff].

2

[Doc. 1 at 10-11]

Defendant Cordova informed Plaintiff that the requested records would be made available on June 3, 2011.  After inspecting the records on June 7, 2011, Plaintiff believed that "[t]he records produced did not include a complete set of records from the Village of Angel Fire's investigation into the circumstances surrounding [Plaintiff's] suspension and termination."  Accordingly, Plaintiff submitted a second public records request on June 8, 2011 for the following:

> Records related to [Plaintiff's] investigation of termination at the Village of Angel Fire.  Please include (i) Chief Collins full investigation of [Plaintiff's] termination (ii) including interviews with all Village Employees (iii) any investigation results submitted to the District Attorney's Office (iv) any conclusions drawn by this investigation from Chief Collins.

[Doc. 1 at 12]

Defendant Cordova informed Plaintiff that the requested records would be made available on June 28, 2011.  Plaintiff responded that "she felt the Village of Angel Fire had violated the [Inspection of Public Records Act (IPRA), NMSA 1978, § 14-2-1 *et seq.*] by taking more than 15 days to provide records and by providing an incomplete response to her requests for her personnel file, the investigation, and communications related to her suspension and termination." [Doc. 1 at 12]  After further clarification of the documents requested, Defendant Cordova notified Plaintiff that the records would be available for inspection on June 23, 2011.  Plaintiff requested that the records be copied and mailed to her. Defendant Cordova responded to Plaintiff's request on July 8, 2011. [Doc. 1 at 13]

On October 13, 2011, Plaintiff filed a *Complaint for Violation of the First Amendment, the Fourteenth Amendment, the New Mexico Whistleblower Protection Act, and the Inspection of Public Records Act.* [Doc. 1]  The *Complaint* alleges, in relevant part, that "the Village still has not produced all responsive records" because the "investigative report from Chief Collins . . . indicates that the interviews conducted were digitally recorded and are available, [but] no recordings were included in the records provided." [Doc. 1 at 13] Based on the foregoing facts, the *Complaint* alleges that Defendants "have violated the Inspection of Public Records Act by:

- Making records available for inspection more than 15 days after receipt of the May 11, 2011 request.
- Imposing barriers to [Plaintiff's] inspection of public records, by forcing her to submit multiple requests for the same information.
- Providing records to [Plaintiff] more than 15 days after the receipt of [Plaintiff's] supplemental requests.
- Failing to make a proper search for public records.
- Failing to produce all responsive records.
- Failing to provide an explanation for not producing responsive records, to the extent that any records were withheld on the basis that they were exempt from disclosure under the IPRA.
- Failing to issue a proper denial under NMSA 1978, § 14-2-11, which requires a public entity to issue a written denial for requests that have not been permitted within 15 days of receipt of the request, describing the records sought and setting forth the names and position of each person responsible for the denial.
- Proposing that there would be a fee for retrieving emails.

[Doc. 1 at 18]  The *Complaint* requests injunctive relief, statutory damages, costs, and attorneys' fees.

On November 17, 2011, Defendants filed the present *Motion to Dismiss Count IV (Violation of the Inspection of Public Records Act) of Plaintiff's Complaint* and

4

accompanying *Memorandum In Support of Motion to Dismiss Count IV (Violation of the Inspection of Public Records Act) of Plaintiff's Complaint*. [Docs. 16 and 17]  Defendants contend that they are not subject to an enforcement action because they complied with Plaintiff's IPRA requests before the *Complaint* was filed.  See Derringer v. State of New Mexico, 68 P.3d 961, 965 (N.M. App. 2003) (holding that "the Inspection of Public Records Act does not provide for damages pursuant to an action brought after a public body has complied with the Act").  Specifically, Defendants contend that "Plaintiff got all the written documents she requested" and that "the recorded interviews referenced in the investigation report are fully described in the report." [Doc. 17 at 5]

In *Plaintiff Linda Apodaca's Response to Defendants' Motion to Dismiss Count IV*, Plaintiff contends that Defendants "did not and still [have] not complied with" IPRA because she still has not received the digital recordings of Chief Collins' interviews. [Doc 20 at 1, 4] Even though the interviews are summarized in Chief Collins' report, Plaintiff maintains that she has a right under IPRA "to inspect the recordings herself and to make her own determination whether the investigative report accurately described the content of those interviews." [Doc. 20 at 5]  Because Defendants "(1) admit they exist, (2) have not yet produced them, (3) have not claimed any applicable exemptions that would allow them to be withheld, (4) have not claimed that the request was unreasonably broad or burdensome, and (5) have not issued a proper denial of those records," Plaintiff contends that "IPRA provides a cause of action." [Doc. 20 at 5]

On January 12, 2012 Plaintiff filed *Plaintiff's Surreply to Defendants' Reply in Support of Motion to Dismiss Count IV (Violation of the Inspection of Public Records Act) of Plaintiff's Complaint*. [Doc. 28] In her surreply, Plaintiff informs the Court "[t]hat on December 22, 2011, one day after completion of briefing on the Defendants' *Motion to Dismiss Count IV (Violation of the Inspection of Public Records Act) of Plaintiff's Complaint* . . . Defendants mailed the Plaintiff an electronic copy" of the digital recordings of Chief Collins' interviews. However, the recorded interviews reference other pertinent materials that were not produced in response to Plaintiff's IPRA request, such as email communications regarding the circumstances surrounding Leahy's leave records. Because there may be additional responsive records outstanding, Plaintiff contends that Defendants' motion to dismiss should be denied. [Doc. 28 at 4]

## II.    STANDARD OF REVIEW

Defendants have moved to dismiss Plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(1) and Fed R. Civ. P. 12(b)(6). Fed. R. Civ. P. 12(b)(1) allows for the dismissal of a claim for lack of subject matter jurisdiction. Generally, Rule 12(b)(1) motions to dismiss for lack of jurisdiction will come in the form of (1) a facial attack, in which case the movant merely challenges the sufficiency of the complaint, requiring the district court to accept the allegations in the complaint as true, or (2) a factual attack, where the movant goes beyond the allegations in the complaint and challenges the facts upon which subject matter jurisdiction depends. Paper, Allied-Industrial, Chemical And Energy Workers Intern. Union

v. Continental Carbon Co., 428 F.3d 1285, 1292 (10th Cir. 2005). In this case, Defendants have launched a facial attack, which challenges the sufficiency of the complaint.

Fed. R. Civ. P. 12(b)(6) permits a Court to dismiss a complaint for failure to state a claim upon which relief can be granted. The sufficiency of a complaint is a question of law, and when considering and addressing a motion to dismiss pursuant to Rule 12(b)(6), a court must accept as true all well-pleaded factual allegations in the complaint, view those allegations in the light most favorable to the non-moving party, and draw all reasonable inferences in the plaintiff's favor. See Moore v. Guthrie, 438 F.3d 1036, 1039 (10th Cir. 2006). Further, in order to withstand a Rule 12(b)(6) motion, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (internal citation omitted) (Iqbal). If a plaintiff cannot nudge the claims "across the line from conceivable to plausible," the complaint must be dismissed. Id. at 570.

In handing down Twombly, the United States Supreme Court invalidated the longstanding rule that a complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). The Conley standard has proved problematic over the years because it suggests that "a wholly conclusory statement of claim would survive a motion to dismiss whenever the pleadings left

7

open the possibility that a plaintiff might later establish some 'set of [undisclosed] facts' to support recovery." Twombly, 550 U.S. at 561 (quoting Conley, 355 U.S. at 45-46). As a result, defendants may be forced to bear the burden and expense of discovery before they are afforded a real opportunity to seek the dismissal of groundless claims, while plaintiffs may use the burdensome discovery process as leverage to induce otherwise unjustified settlement of such groundless claims. See Twombly, 550 U.S. at 557-59.

A complaint is now subject to dismissal under the new standard if it does not "possess enough heft to 'sho[w] that the pleader is entitled to relief.'" Twombly, 550 U.S. at 557 (quoting Fed. R. Civ. P. 8(a)(2)). In other words, "the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007).

Two "working principles" underlie the Twombly standard. Iqbal, 129 S.Ct. at 1949.

First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . . Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

Id. at 1949-50 (internal citations omitted). Thus, in order to evaluate a motion to dismiss, the Court engages in a two-part inquiry by initially identifying those allegations that are nothing more than legal conclusions and therefore "not entitled to the assumption of truth" and then

8

considering whether the factual allegations "plausibly suggest an entitlement to relief." Id. at 1951. Accordingly, the Court begins by evaluating the elements of the pleaded cause of action, in order to determine whether the complaint states sufficient factual allegations to implicate a claim for relief. See id. at 1947.

## III.   DISCUSSION

Under IPRA, every person, with limited exceptions, "has a right to inspect public records of this state." § 14-2-1(A). The term "public records" is defined as "all documents, papers, letters, books, maps, tapes, photographs, recordings and other materials, regardless of physical form or characteristics, that are used, created, received, maintained or held by or on behalf of any public body and relate to public business, whether or not the records are required by law to be created or maintained." § 14-2-6(F). Pursuant to Section 14-2-8(D), a records custodian who receives a written request to inspect public records "shall permit the inspection immediately or as soon as is practicable under the circumstances, but not later than fifteen days after receiving a written request. If the inspection is not permitted within three business days, the custodian shall explain in writing when the records will be available for inspection or when the public body will respond to the request."

A person may bring an action to enforce the provisions of IPRA if: (1) a custodian does not deliver or mail a written explanation of denial after receipt of a written request for inspection, § 14-2-11(C), or (2) a request for public records has been denied. § 14-2-12(A)(2); see San Juan Agric. Users Ass'n v. KNME-TV, 257 P.3d 884, 892-93 (N.M. 2011) (holding that IPRA does not preclude enforcing a records request made through an agent).

If an enforcement action is successful, then the "[t]he court shall award damages, costs and reasonable attorneys' fees." § 14-2-12(D). Damages shall: "(1) be awarded if the failure to provide a timely explanation of denial is determined to be unreasonable; (2) not exceed one hundred ($100) dollars per day; (3) accrue from the day the public body is in noncompliance until a written denial is issued; and (4) be payable from the funds of the public body." § 14-2-11(C).

"Recognizing that a representative government is dependant upon an informed electorate," the purpose of IPRA is to ensure "that all persons are entitled to the greatest possible information regarding the affairs of government and the official acts of public officers and employees." § 14-2-5. IPRA's stated policy "creates a presumption in favor of access: 'The citizen's right to know is the rule and secrecy is the exception. Where there is no contrary statute or countervailing public policy, the right to inspect public records must be freely allowed.'" San Juan Agric. Users Ass'n v, 257 P.3d at 888 (quoting State ex rel. Newsome v. Alarid, 568 P.2d 1236, 1243 (N.M. 1977)).

In Derringer, the New Mexico Court of Appeals considered whether the statutory damages permitted under IPRA "may be awarded in a later action brought after the public body has complied with the Act." 68 P.3d at 962. In that case, the plaintiff requested information from the New Mexico Livestock Board (Board) on multiple occasions. After receiving untimely and unsatisfactory responses, the plaintiff "complained to the Attorney General about the Board's lack of compliance with his requests for information." Id. at 963. After conducting an investigation, the Attorney General determined that the Board's

10

responses were untimely, but that the "the Board had ultimately produced to Plaintiff everything in its possession that Plaintiff had requested and therefore she would take no further action." Id. Thereafter, the plaintiff filed suit against the Board alleging, in relevant part, statutory violations of IPRA. The trial court granted the Board's motion to dismiss the complaint for failure to state a claim upon which relief could be granted. Id.

On appeal, the Court of Appeals determined that IPRA plainly "provides a citizen the means to enforce the Act *if* the public body does not comply." Id. at 964 (emphasis in original). However, "once the custodian complies, the public body is no longer subject to an enforcement action. Contrary to Plaintiff's assertion that he should be awarded damages even if he is not bringing an action to force compliance with the Act, it is only in the event that a court action is brought to enforce the Act that a plaintiff is awarded mandatory costs, fees, and damages, and then only if the plaintiff is successful in that action." Id. Because the Board had produced all of the records requested by the plaintiff before the complaint was filed, the Court determined that the Board was in compliance with IPRA and, therefore, the trial court properly dismissed the complaint for failure to state a claim upon which relief could be granted. Id. at 965.

Applying the foregoing principles to the facts alleged in the *Complaint*, the Court concludes that Defendants' motion to dismiss must be denied. According to the *Complaint*, Plaintiff requested public records pertaining to "Chief Collins full investigation of [Plaintiff's] termination . . . including interviews with all Village Employees." [Doc. 1 at 12] As previously explained, a "public record" includes "tapes, . . . recordings and other

materials, regardless of physical form or characteristics . . ." §14-2-6(F).  The recorded

interviews therefore constitute a public record and, subject to the limited exceptions

enumerated in § 14-2-1, Plaintiff had a right under IPRA to inspect these recordings.

However, Defendants failed to disclose Chief Collins' recorded interviews or deliver a

written explanation of denial prior to the filing of Plaintiff's *Complaint*.  <u>See</u> § 14-2-11(C)

("A custodian who does not deliver or mail a written explanation of denial within fifteen

days after receipt of a written request for inspection is subject to an action to enforce the

provisions of the Inspection of Public Records Act and the requester may be awarded

damages."); §14-2-12(A)(2) ("An action to enforce the Inspection of Public Records Act may

be brought by . . . a person whose written request has been denied.").   Accordingly,

Plaintiff's *Complaint* states a claim for enforcement under IPRA.

Defendants argue, without citation to legal authority, that their disclosure complied

with IPRA because the recorded interviews were summarized in Chief Collins' investigative

report.  The Court is not persuaded.  Nothing in IPRA or New Mexico law permits a public

body to withhold public records subject to disclosure under the Act based simply on a

representation that the substantive information contained in those records was summarized

or compiled elsewhere in previously disclosed records.  <u>See</u> § 14-2-1(A) (listing records

exempted from IPRA); <u>see also State ex rel. Newsome v. Alarid</u>, 568 P.2d 1236, 1243-44

(N.M. 1977) (recognizing a non-statutory exception to IPRA, also known as the "rule of

reason," which protects the confidentiality of public records based on public policy; the trial

court must conduct an *in camera* inspection of the challenged records and balance the public

right of access against the harm that may result if the records are made available).  Indeed,

such a broad construction of IPRA would be contrary to "New Mexico's policy of open

government[, which] is intended to protect the public from having to rely solely on the

representations of public officials that they have acted appropriately."  City of Farmington

v. The Daily Times, 210 P.3d 246, 252 (N.M. App. 2009); see also Derringer, 68 P.3d at 964

("[A] citizen has a fundamental right to have access to public records, and when there is no

contrary statute or countervailing public policy, the right to inspect public records must be

freely allowed.").

Alternatively, Defendants argue, for the first time in their reply brief, that their

disclosure complied with IPRA because Plaintiff did not "plead that she specifically

requested digital records as required by IPRA, and in fact, did not make such a request."

[Doc. 21 at 3]  In support thereof, Defendants rely on Section 14-2-9, entitled "Procedure for

inspection," which provides as follows:

> A custodian shall provide a copy of a public record in electronic format if the
> public record is available in electronic format and an electronic copy is
> specifically requested. However, a custodian is only required to provide the
> electronic record in the file format in which it exists at the time of the request.

§ 14-2-9(B).  The plain language of this provision simply pertains to the procedure for

inspection and, therefore, neither limits nor purports to limit the substantive right to inspect

public records under the Act.  Although a public body does not have a duty, absent a specific

request, to provide electronic records in an electronic format, it nonetheless has a duty to

produce the requested records for inspection in accordance with the dictates of IPRA.  See

§ 14-2-1(A).  Because Defendants did not produce Chief Collins' recorded interviews in response to Plaintiff's IPRA request, either in an electronic or non-electronic format, they were not in compliance with IPRA at the time Plaintiff's *Complaint* was filed.

Ortiz v. Jaramillo, 483 P.2d 500 (N.M. 1971), which pre-dates the enactment of Section 14-2-9(B), nevertheless is instructive on this point.  In Ortiz, the petitioner sought a writ of mandamus ordering the Bernalillo County Clerk "to furnish him a copy of [a] magnetic tape." Id. at 501.  The parties agreed that the magnetic tape was a public record under IPRA, but disagreed whether the magnetic tape was subject to disclosure given its unique format.  The New Mexico Supreme Court was "unable to understand why the right to inspect public records should not carry with it the benefits arising from improved methods and techniques of recording and utilizing the information contained in these records, so long as proper safeguards are exercised as to their use, inspection, and safety." Id.  Accordingly, the Court held that the magnetic tape was subject to disclosure under IPRA and ordered the trial court "to issue a peremptory writ of mandamus commanding respondent to furnish petitioner a copy of the 'working master record' magnetic tape." Id. at 502.  Thus, pursuant to *Ortiz*, as well as the plain language of IPRA, a public body has an obligation to produce public records for inspection "regardless of [the record's] physical form or characteristics." § 14-2-6(F).

## IV.    CONCLUSION

For the foregoing reasons, the Court concludes that the allegations in Plaintiff's *Complaint* are sufficient to state a claim for enforcement under IPRA.

**IT IS THEREFORE ORDERED** that Defendants' *Motion to Dismiss Count IV (Violation of the Inspection of Public Records Act) of Plaintiff's Complaint* [Doc. 16] is **DENIED**.

**SO ORDERED** this 3rd day of February, 2012 in Albuquerque, New Mexico.

M. CHRISTINA ARMIJO
United States District Judge